AO 93  (Rev. 12/09) Search and Seizure Warrant

| | |
|---|---|
| | ☒ FILED ___ LODGED<br>~~___ RECEIVED~~ ___ COPY<br><br>MAR 2 5 2026<br><br>CLERK U S DISTRICT COURT<br>DISTRICT OF ARIZONA<br>BY _NM_ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

District of Arizona

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
)
Grey Apple iPhone (Subject Cellular Telephone 1) )
Black Apple iPhone (Subject Cellular Telephone 2) )
)

Case No.  **26-1224 MB**

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ___**Arizona**_____
*(identify the person or describe the property to be searched and give its location)*:

A Grey Apple iPhone and Black Apple iPhone, more fully described in Attachment A-1 and A-2, which is attached and incorporated herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, attached and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____**4|8|2026**_____
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.     ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
James F. Metcalf_____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: **3|25|2026 at 3:08 pm**  _____
*Judge's signature*

City and state:   Yuma, Arizona_____    ___James F. Metcalf,  United States Magistrate Judge___
*Printed name and title*

## ATTACHMENT A-1

The property to be searched is a Grey Apple iPhone, unknown model, seized from Ivan VERDUGO MOLINA on March 20, 2026, ("**Subject Cellular Telephone 1**"). The **Subject Cellular Telephone 1** is currently located at the ATF Office located at 2270 S. Ridgeview Drive, Suite 202, Yuma, AZ 85364.

This warrant authorizes the forensic examination of **Subject Cellular Telephone 1** for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT A-2

The property to be searched is a black Apple iPhone, unknown model, seized from Ivan VERDUGO MOLINA on March 20, 2026, ("**Subject Cellular Telephone 2**"). The **Subject Cellular Telephone 2** is currently located at the ATF Office located at 2270 S. Ridgeview Drive, Suite 202, Yuma, AZ 85364.

This warrant authorizes the forensic examination of **Subject Cellular Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.



2

## ATTACHMENT B

1. Any records and information found within the digital contents of **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** that relate to violations of 18 U.S.C. § 371 and 554(a) Conspiracy to smuggle Goods from the United States.

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms;

    b. all information related to buyers or sources of firearms (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of firearm proceeds;

    d. all information regarding the receipt, transfer, possession, transportation, or use of firearm proceeds;

    e. any information recording schedule or travel;

    f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of **Subject Cellular Telephone 1** and **Cellular Telephone 2** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

    As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored

3

communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

4

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

X FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 25 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM ___ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Grey Apple iPhone (Subject Cellular Telephone 1)
Black Apple iPhone (Subject Cellular Telephone 2)

)
)
)
)
)
)
)

Case No. **26-1224MB**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

A Grey Apple iPhone and Black Apple iPhone, more fully described in Attachment A-1 and A-2, which is attached and incorporated herein.

located in the _____ District of _____ Arizona _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 371, 554(a) | Conspiracy to Smuggle Goods from the United States |

The application is based on these facts:
See Affidavit attached and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Louie Uhl

*Louie Uhl*

NEAL ANGLIN  Digitally signed by NEAL ANGLIN
Date: 2026.03.25 14:57:17 -07'00'
_____
*Applicant's signature*

Neal Anglin, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Subcribed and sworn telephonically _____ *(specify reliable electronic means).*

Date: **3/25/2026**
_____
*Judge's signature*

City and state: Yuma, Arizona
James F. Metcalf, United States Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A-1

The property to be searched is a Grey Apple iPhone, unknown model, seized from Ivan VERDUGO MOLINA on March 20, 2026, ("**Subject Cellular Telephone 1**"). The **Subject Cellular Telephone 1** is currently located at the ATF Office located at 2270 S. Ridgeview Drive, Suite 202, Yuma, AZ 85364.

This warrant authorizes the forensic examination of **Subject Cellular Telephone 1** for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT A-2

The property to be searched is a black Apple iPhone, unknown model, seized from Ivan VERDUGO MOLINA on March 20, 2026, ("**Subject Cellular Telephone 2**"). The **Subject Cellular Telephone 2** is currently located at the ATF Office located at 2270 S. Ridgeview Drive, Suite 202, Yuma, AZ 85364.

This warrant authorizes the forensic examination of **Subject Cellular Telephone 2** for the purpose of identifying the electronically stored information described in Attachment B.



2

**ATTACHMENT B**

1.      Any records and information found within the digital contents of **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** that relate to violations of 18 U.S.C. § 371 and 554(a) Conspiracy to smuggle Goods from the United States.

    a.      all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms;

    b.      all information related to buyers or sources of firearms (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c.      all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of firearm proceeds;

    d.      all information regarding the receipt, transfer, possession, transportation, or use of firearm proceeds;

    e.      any information recording schedule or travel;

    f.      evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    g.      contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of **Subject Cellular Telephone 1** and **Cellular Telephone 2** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

        As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored

3

communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

### <u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT</u>

Your Affiant, Special Agent Neal Anglin, being first duly sworn, hereby deposes and states as follows:

### I.    <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.    Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephones described more particularly in Attachments A-1 and A-2 (hereafter the "**Subject Cellular Telephone 1** and **Subject Cellular telephone 2**"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since August 2022. Prior to my appointment with the ATF, I was a sworn law enforcement officer in the Commonwealth of Virginia for over nine (9) years, the last three of which I was assigned to the Special Investigations Bureau, Narcotics Unit.  I am currently assigned to the ATF Yuma Office, an enforcement group responsible for investigating violent crime, Firearms Trafficking, gangs, armed drug trafficking, and other firearm related violations.  In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and use of firearms, illegal possession and distribution of controlled substances, and for commission of violent crimes.  Many of these investigations involved the execution of search warrants and led to the arrest and conviction of individuals for violations of federal and state laws.

3.    During my time as a law enforcement officer, I have become knowledgeable about the methods and modes of narcotics and firearm operations, and the language and patterns of drug use and trafficking.  I have gained knowledge in the use of various investigative techniques including the use of wiretaps, physical surveillance, undercover agents, confidential informants and cooperating witnesses, the controlled purchases of

illegal narcotics, the trafficking of firearms, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, and the execution of search and arrest warrants.

4.    The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and observations of other law enforcement officers involved in this investigation.  All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation.

5.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

6.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of: 18 U.S.C. § 371 and 554(a)(Conspiracy to smuggle Goods from the United States) are likely to be found in the contents of the **Subject Cellular Telephone 1** described in Attachment A-1 and **Subject Cellular Telephone 2** described in Attachment A-2.

## II.    BASIS FOR PROBABLE CAUSE

7.    On March 19, 2026, ATF and Border Patrol Agents (BPA) were conducting surveillance in San Luis, Arizona. At approximately 09:48 PM, Border Patrol Agents were in the parking area of Del Sol Market located at 1930 E. Juan Sanchez Blvd., San Luis, Arizona 85349. BPAs saw a black Toyota Corolla bearing Arizona license plate 13A7YK parked next to a red Dodge Ram.

8.    The driver of the Toyota Corolla, later identified as VERDUGO Molina, Ivan Guadalupe (DOB: 1998, Arizona Driver License D07451074), exited the Toyota Corolla

2

and approached the front passenger door of the Dodge Ram. VERDUGO then walked to the trunk of the Toyota Corolla, opened it, and proceeded to the rear passenger side door of the Dodge Ram. VERDUGO removed objects from the Ram and placed them in the trunk of the Toyota Corolla.

9.    BPA observed what appeared to be rifle barrels and a small case. VERDUGO made approximately four to five trips between the Dodge Ram and his vehicle. During the last two trips, BPA observed what appeared to be a barrel with a muzzle flash hider and an AK-47 rifle, identified by its barrel shape and gas tube protruding from VERDUGO's silhouette. VERDUGO then closed the trunk and departed the area.

10.    BPAs and ATF SAs conducted surveillance on the Toyota Corolla to the area of the San Luis International Port of Entry (POE). The Toyota Corolla would get in line in the southbound lane headed to Mexico but would get out of the line right before entering the Port of Entry. The only traffic in the area was in the southbound lane VERDUGO kept entering and exiting. Agents also observed the Toyota Corolla park at different locations which were approximately .2 miles from the San Luis International Port of Entry. VERDUGO continued with the same driving pattern for approximately 2.5 hours. Based on training and experience, this driving pattern is consistent with firearm smuggling to Mexico. Smugglers drive around the area of the Port of Entry to determine if they are being followed or to see if CBP is inspecting vehicles on the southbound lane.

11.    At approximately 12:10 AM, VERDUGO attempted to enter Mexico through the southbound lane. Customs and Border Protection (CBP) Anti-Terrorism Contraband Enforcement Team (ATCET) Officers were notified, and ATCET stopped VERDUGO for an inspection. CBPOs obtained a negative oral customs declaration from VERDUGO for firearms, ammunition, and currency. CBPOs also asked VERDUGO if the Toyota Corolla belonged to him and he confirmed. CBPOs instructed VERDUGO to drive through the Mobile X-Ray Portal Light (MXPL). VERDUGO drove through the MXPL

3

and parked in the Vehicle Secondary lot. CBPOs obtained a second negative oral customs declaration for firearms, ammunition, and currency, from VERDUGO. CBPOs verified the Xray scan of the vehicle and noticed anomalies in the trunk area. CBPOs opened the trunk of the vehicle and removed the wheel well cover and discovered several firearms. See the below photographs:

 

12.     The following items were removed from the Toyota Corolla:

    a.  FN Columbia SC USA, model M249S, 5.56-millimeter (mm) caliber rifle, serial number M249SA11014;

    b.  FN USA, model Scar 17s, 7.62x51mm caliber rifle, serial number H1C32697;

    c.  FN Columbia SC USA, model Scar 17S, 7.62x51 mm rifle, serial number H0C13847;

    d.  M1919 style belt fed firearm,7.62 mm;

    e.  Glock, model 19, 9mm pistol, serial number CDZP030;

f.  Romarm Cugir Romania CAI VT, model WASR 10, 7.62x39mm caliber rifle, serial number A1-37305-15RO;

g.  (3) Glock 15 round magazines;

h.  (5) AK style 30 round magazines;

i.  (1) 7.62x51mm 25 round magazine; and

j.  (1) 7.62x51mm 20 round magazine.

13.  Homeland Security Investigations (HSI), ATF SAs, and BPAs responded to the San Luis POE and continued the investigation into VERDUGO. Agents read VERDUGO an Advice of Rights and Waiver (ATF E- Form 3200.4). VERDUGO did not wish to speak with the agents without a lawyer present, and agents concluded the interview.

14.  CBPOs located **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** in the Toyota Corolla driven by VERDUGO. CBPOs turned over **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** to ATF SAs.

15.  The **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** are currently in the lawful possession of ATF and in storage at the Yuma, Arizona ATF Office. In my training and experience, your Affiant knows that the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** first came into the possession of ATF.

16.  Based on your Affiant's training and experience, I believe the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** was used in the commission of violations of: 18 U.S.C. § 371 and 554(a)(Conspiracy to smuggle Goods from the United States), and evidence of those crimes are likely to be found in the contents of the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**.

5

### III.    ITEMS TO BE SEIZED

17.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**.

18.    Based on your Affiant's training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, I know the following:

a.    Firearm traffickers commonly use cellular telephones to communicate with other firearm traffickers, straw purchasers, and customers about firearm-related activities using telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, firearm traffickers commonly use other capabilities of cellular telephones to further their firearm trafficking activities. Therefore, evidence related to firearms trafficking activity is likely to be found on **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**.

b.    Firearms traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities.  Therefore, records of the movement of firearm proceeds, including deposits, transfers, and purchases, are likely to be found on the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**.

c.    Firearm traffickers commonly take photographs of their firearms, receipts, and themselves.  Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**.

d.    Firearms traffickers commonly send correspondence between persons buying and selling firearms.  This often occurs by e-mail, text message, voice messages and encrypted messaging apps sent to and from smart phones.  This includes sending

6

photos of firearms between the seller and the buyer, as well as negotiation of price. Therefore, based on my experience, I believe that it is probable **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** may contain text messages, voice messages, or e-mails between VERDUGO and other individuals discussing the possession, sale, or transfer firearms.

19. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also request permission to seize any articles tending to establish the identity of persons who have dominion and control over **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2.**

## IV.    DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

20. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

21. Your Affiant submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** for at least the following reasons:

Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data

7

that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

8

*Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2** because:

a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular

9

telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence to conceal it from law enforcement).

  c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

  d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media

10

behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant that I am applying for would permit imaging or otherwise copying the contents of **Subject Cellular Telephone 1** and **Subject Cellular Telephone 2**, including the use of computer-assisted scans.

23.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

11

## V.    CONCLUSION

24.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of: 18 U.S.C. § 371 and 554(a) Conspiracy to smuggle Goods from the United States are likely to be found in the contents of the **Subject Cellular Telephone 1** described in Attachment A-1 and **Subject Cellular Telephone 2** described in Attachment A-2.

Neal Anglin
Digitally signed by Neal Anglin
Date: 2026.03.25 14:57:43
-07'00'

Special Agent Neal Anglin
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and telephonically sworn to before me this __25th__ day of __March__, 2026.

HONORABLE JAMES F. METCALF
United States Magistrate Judge

12